**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PETER J. VOGGENTHALER, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MARYLAND SQUARE, LLC, et al., ) <br> ) <br> Defendants. ) <br> ─────────────────────────── ) <br> MARYLAND SQUARE, LLC, et al., ) <br> ) <br> Third Party Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GENERAL GROWTH MANAGEMENT, INC., ) <br> a foreign corporation, et al. ) <br> ) <br> Third Party Defendants. ) <br> ─────────────────────────── ) | 2:08-CV-1618-RCJ-GWF <br><br> **ORDER** |

Currently before the Court is a Motion for Leave to File a Third Party Complaint (#249) filed by Defendant Melvin Shapiro.

Also before the Court is a Motion for More Definite Statement (#292) filed by Third Party Defendants Boulevard Mall, LLC and General Growth Management, Inc.

Also before the Court is a Motion to Dismiss Third Party Complaint (#310) filed by Third Party Defendant Sears Roebuck & Co.

Finally, before the Court is a Motion to Consolidate (#335) filed by Defendants Melvin Shapiro, Shapiro Bros. Investment Co., a dissolved Nevada corporation, and Melvin Shapiro as Executor of the Estate of Philip Shapiro, deceased.

The Court heard oral argument on the foregoing motions on July 6, 2010.

## DISCUSSION

### I. Motion of Defendant Melvin Shapiro for Leave to File a Third-Party Complaint

Defendant Melvin Shapiro ("Defendant Shapiro") moves the Court pursuant to Federal Rule of Civil Procedure 14(a)(1) to file a third-party complaint in this action. Defendant Shapiro seeks to add third-party claims of indemnification, contribution and/or negligence against many of the entities previously identified in the Maryland Square Defendants' Third Party Complaint (#224) dated February 3, 2010.

Rule 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The purpose of this rule "is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." Sw. Adm'r, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir. 1986)(citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1442, at 202-03 (1971)).

The Court grants Defendant Shapiro's request for leave to file a third-party complaint. The proposed third-party complaint does not add a party not already part of this case and does not assert new claims not currently pending before the Court. In addition, Defendant Shapiro's motion is timely in light of the Court's previous Order (#238) extending the time within which to add claims or parties to February 26, 2010. Finally, Shapiro's motion has not been opposed by any party.

### II. General Growth Management, Inc.'s and Boulevard Mall, LLC's Motion for More Definite Statement

Third-Party Defendants General Growth Management, Inc. ("General Growth") and Boulevard Mall, LLC ("BMLLC") have filed a Motion for More Definite Statement (#292) in relation to Third Party Plaintiffs Maryland Square Shopping Center, LLC, The Herman Kishner Trust dba Maryland Square Shopping Center, Irwin Kishner, Jerry Engel, Bank of America, as trustee for The Herman Kishner Trust, Maryland Square, LLC, and the Clark County School

1 District's (collectively referred to herein as "Third Party Plaintiffs") Third Party Complaint.

2 According to General Growth and BMLLC, they are entitled to a more definite statement because the allegations relating to them in the Third Party Complaint are so "ambiguous and contradictory" that General Growth and BMLLC are "prevented from preparing an appropriate response." ( Motion for More Definite Statement (#292) at 3). In this regard, General Growth and BMLLC state that they are identified in the Third Party Complaint, and referred to therein, as "Boulevard Mall." However, throughout the Third Party Complaint, the Third Party Plaintiffs also refer to the physical location known as the Boulevard Mall as the "Boulevard Mall." As such, General Growth and BMLLC state that the Third Party Plaintiffs "have clearly failed to differentiate between the business entities and the parcel of land at issue." Id. Because of this, General Growth and BMLLC request that the Third Party Complaint "properly differentiate between the business entities . . . and the real property known as, The Boulevard Mall." Id. Moreover, if there is a relationship between the business entities and the physical location, General Growth and BMLLC request that such relationship be alleged.

In response, the Third Party Plaintiffs allege that a more definite statement is unnecessary because the allegations in the Third Party Complaint that General Growth and BMLLC find ambiguous or unintelligible "can very easily be responded to in an Answer." (Opposition to Motion for More Definite Statement (#305) at 3). The Third Party Plaintiffs concede that in their complaint "the owners of the Boulevard Mall property - the Boulevard Mall Defendants - were collectively referred to as Boulevard Mall," and that "[l]ater in the Third Party Complaint, in the specific allegations against Boulevard Mall, the term 'Boulevard Mall' was used interchangeably referring to the actual location of the mall and the Third Party Defendant entities." Id. at 4. Despite this, the Third Party Plaintiffs argue that General Growth and BMLLC's motion is based on a "manufactured ambiguity," designed solely to seek a delay in responding to the allegations in the Third Party Complaint. As such, the Third Party Plaintiffs assert that the motion should be denied and General Growth and BMLLC should be ordered to immediately respond to the Third Party Complaint. Id. at 6.

///

1    Federal Rule of Civil Procedure 12(e) states that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Id. "Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." Woods v. Reno Commodities, Inc., 600 F.Supp. 574, 580 (D.C. Nev. 1984)(citing 2A Moore's Fed. Prac., ¶ 12.18 at p. 2389). "A motion for more definite statement should not be granted to require evidentiary detail that may be the subject of discovery." Id.

The Court grants the motion for more definite statement. The allegations asserted in the Third Party Complaint are ambiguous because the Third Party Plaintiffs identified both the business entities and the physical location as the "Boulevard Mall." Such identification creates vague and ambiguous pleadings because General Growth and BMLLC are required to guess as to which allegations relate to them as the business entities versus the physical location of the mall. A more definite statement would clarify this ambiguity and allow General Growth and BMLLC to respond to the allegations in a proper manner.

**III. Third Party Defendant Sears Roebuck & Company's Motion to Dismiss**

Third Party Defendant Sears Roebuck & Company ("Sears") has filed a motion to dismiss the Third Party Complaint asserted against it by the Third Party Plaintiffs Maryland Square, LLC; the Herman Kishner Trust, dba Maryland Square Shopping Center; Irwin Kishner; Jerry Engel, and Bank of America, as Trustees for The Herman Kishner Trust; Maryland Square, LLC; and Clark County School District (collectively referred to herein as the "Maryland Square Defendants").

According to Sears, the claims asserted against it must be dismissed because they fail to state plausible claims for relief. (Motion to Dismiss (#310)). Sears states that the Third Party Complaint "constitutes nothing more than speculation about what [Sears] *might* have done to contribute to the claimed contamination." Id. at 3. Specifically, Sears states that "the sparse nature of the allegations contained in the [Third Party Complaint] reveals that while the

4

Maryland Square Defendants proclaimed they 'believe' the third party defendants are responsible for the plume . . . a more accurate characterization of their state of mind is that they wish the third party defendants were responsible." Id. Sears states that the allegations in the Third Party Complaint are insufficient because the Maryland Square Defendants have not alleged that Sears "actually used any type of contaminants actually contained in the Maryland Square plume, that Sears actually spilled, accidentally discharged, or released any such contaminants, or that any such contaminants spilled, accidentally discharged, or released found their way into the Maryland Square Plume." Id. at 6.

In response, the Maryland Square Defendants allege that they have sufficiently provided factual allegations concerning their claims against Sears and Sears' potential liability for contribution to the plume at issue in Plaintiffs' Complaint. (Opposition to Motion to Dismiss (#318) at 3). According to the Maryland Square Defendants, their claim against Sears is straightforward: "Namely, Defendants, who have been alleged to be responsible for a contaminant plume in the primary Complaint, allege that Sears, through releases of contaminants during operations conducted at the neighboring Boulevard Mall, may have contributed to this plume." Id. Specifically, the Maryland Square Defendants state that "[u]pon information and belief, the Maryland Square Defendants allege that Sears and the other Boulevard Mall operators released PCE and other chemicals into the soil and groundwater and allege that this release could be contributing to the PCE plume alleged by the Plaintiffs." Id. at 4.

**A. Legal Standard**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. The Ninth Circuit, however, has expanded the court's view to allow it to

consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court should exercise caution, however, and presume against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). To avoid a Rule 12(b)(6) dismissal, then, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)(stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though "detailed factual allegations" are not required for a complaint to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955).

**B. Allegations Asserted in the Third Party Complaint**

The Maryland Square Defendants' Third Party Complaint alleges four causes of action against Sears: (1) Recovery of Response Costs Pursuant to CERCLA § 107(a)(1-4)(B); (2) Contribution Pursuant to CERCLA § 113(f); (3) Equitable Indemnity; and (4) Declaratory Relief.

According to the Third Party Complaint, this "action primarily arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. § 9607. In the Third Party Complaint, the Maryland Square Defendants state that they "believe the Third Party Defendants are wholly or partially responsible for the PCE or other chemical contamination that may form the plume alleged to exist beneath the Plaintiffs' homes." (Third Party Complaint (#224) at 6). According to the Maryland Square Defendants, the Boulevard Mall "currently or in the past has had tenants who used PCE or other chemical contaminants in the performance of their operations." Id. at 7. "These entities include, but are not limited to, a Sears Automotive Center, a Good Year Automotive Center, and/or the Ted Wiens Automotive Center." Id. at 7. In the Third Party Complaint, the Maryland Square Defendants collectively refer to these entities as the "Boulevard Mall Operators." Id. The allegations in the Third Party Complaint state that throughout the history of the Boulevard Mall, the Boulevard Mall Operators have used PCE or other hazardous materials in their operations. Id. "Upon information and belief, the Boulevard Mall Operators have spilled or otherwise accidentally discharged PCE or other hazardous materials that may have contributed to the plume alleged by the Plaintiffs." Id. Finally, the Third Party Complaint states that the Boulevard Mall Operators "released PCE or other chemical contaminants into the soil and groundwater," and that the "release of these contaminants may [contain] hazardous materials contributing to the PCE plume alleged by the Plaintiffs."[1] Id.

Sears alleges that the foregoing facts are not sufficient to state a claim for relief under CERCLA. According to Sears, the allegations are merely "hopeful wishes" that fail to satisfy the pleading standard created in Iqbal. Rather than asserting conduct by Sears which actually occurred, Sears states that the Third Party Plaintiffs merely state what "may" have occurred by the Boulevard Mall Operators.

**C. First Cause of Action under CERCLA § 107(a)(1-4)(B)**

CERCLA, 42 U.S.C. § 9601 et seq., was enacted in 1980 "'to provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.'" Carson Harbor Vill.

---

[1] As to Sears, the Third Party Complaint also notes that remediation actions occurred at the Sears Automotive Center in 1993 and 2000.

7

v. County of Los Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006)(quoting Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub.L.No. 96-510, 94 Stat. 2767 (1980)). CERCLA contains a provision, 42 U.S.C. § 9607(a), which allows private parties who incur cleanup costs to recover those costs from "various types of persons who contributed to the dumping of hazardous waste at a site." Id. (quoting Ascon Props., Inc. v. Mobile Oil Co., 866 F.2d 1149, 1152 (9th Cir. 1989)). To establish a prima facie case under § 9607(a), the plaintiff must show that: (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9609(1); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan;" and (4) the defendant is in one of four classes of persons subject to liability under § 9607(a). Id.

In the Third Party Complaint's first cause of action, the Third Party Plaintiffs state that they "have been and currently remain engaged in conducting studies and other activities designed to develop an appropriate response plan for removal and/or remedial action with regard to the released hazardous substances." (Third Party Complaint (#224) at 9). They state that they "have incurred and will continue to incur substantial response costs in developing and implementing the appropriate response action under the supervision of the Nevada Department of Environmental Protection and other appropriate government agencies or as approved by the Court." Id. In addition, the Third Party Plaintiffs state that at all times relevant, there have been releases or threatened releases of hazardous substances from the facilities operated by the Boulevard Mall Operators and that such releases have caused or continue to cause response costs to the Third Party Plaintiffs.

Sears argues that the foregoing allegations are not sufficient to state a claim for relief because the Third Party Plaintiffs did not allege the four elements necessary to assert a CERCLA claim under section 9607(a), nor did they allege facts specific to Sears as to those elements. According to Sears, "[t]here is no indication of which tenants allegedly used, spilled, discharged or released which materials or chemicals, when or where this occurred, or what circumstances surrounded these events." (Motion to Dismiss (#310) at 12). By

referring to Sears collectively with other entities, Sears states that the allegations in the Third Party Complaint "make it difficult, if not impossible to tell which conduct is being alleged" against Sears specifically. Id. at 14.

In this matter, the Court finds that the first cause of action fails to state a claim for relief because the allegations asserted are speculative in nature. In this regard, there are insufficient factual allegations from which the Court could infer that a release or threatened release from any facility connected to Sears caused the Maryland Square Defendants to incur response costs. All that can be derived, is that the Maryland Square Defendants have incurred response costs relating to the groundwater plume, and that Sears and other collective third party defendants "may" have used and/or spilled solvents and other chemicals at another location. Because the Third Party Complaint uses the terms "may" and "may have," the allegations are not sufficient to raise the right to relief above the speculative level as required to survive a motion to dismiss.

In their Opposition, the Maryland Square Defendants request that prior to dismissal, they be given an opportunity to amend the complaint with a more definite statement. In this regard, because the factual assertions in the complaint as to Sears are not sufficient to state a plausible claim for relief, the Court, rather than dismissing the claim for relief, will provide the Maryland Square Defendants a limited time to file a more definite statement as to the first cause of action. The more definite statement should include not only the elements necessary to bring a cause of action under section 9607(a), but also sufficient factual content to raise the right to relief above the speculative level.

**D. Second Cause of Action under CERCLA § 113(f)**

Under 42 U.S.C. § 9613 (f)(1) "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9609 of this title or under section 9607(a) of this title." In the Third Party Complaint, the Maryland Square Defendants seek contribution under section 113(f)(1) based on Plaintiffs' RCRA claims against them. (Third Party Complaint (#224) at 11). Specifically, the Maryland Square Defendants state that "if the Maryland Square Parties

are found to be liable under RCRA, the Third Party Defendants and each of them are liable to the Maryland Square Parties for their acts or omissions." Id.

Sears argues that this claim should be dismissed because the Maryland Square Defendants "do not allege the necessary factual prerequisites for seeking contribution" under section 113(f). (Motion to Dismiss (#310) at 20). In this regard, Sears states that the second cause of action seeks contribution for a claim Plaintiffs made against the Maryland Square Defendants under RCRA. According to Sears, a "RCRA action cannot satisfy the threshold requirement for a 113(f)(1) action" and, as such, the Maryland Square Defendants cannot state a 113(f)(1) contribution claim against Sears.

In this matter, Sears is correct that the Maryland Square Defendants improperly base their CERCLA contribution claim on the underlying RCRA claim filed by Plaintiffs. In this regard, 42 U.S.C. 9613(f) states that contribution may be sought "during or following any civil action under section 9606 *of this title* or under section 9607(a) *of this title*." (Emphasis added). As such, the civil action must have been brought under CERCLA; it does not relate to claims brought under RCRA. However, the Court notes that the Maryland Square Defendants have now been sued under CERCLA by NDEP. Thus, rather than dismissing this claim for improperly seeking contribution under a RCRA cause of action, the Court will allow the Maryland Square Defendants leave to amend their Third Party Complaint to state a proper contribution claim.

### E. Third Cause of Action for Equitable Indemnity

The Maryland Square Defendants assert a cause of action against Sears for equitable indemnity. According to the Maryland Square Defendants: "In the event liability should be established in this action . . . based on the contamination alleged by the Plaintiffs, whose liability is expressly denied, the Maryland Square Parties allege on information and belief that such liability was realized wholly or in part by reason of the conduct of the Third Party Defendants . . . ." (Third Party Complaint (#224) at 12).

Under Nevada law, "[n]oncontractual or implied indemnity is an equitable remedy that allows a defendant to seek recovery from other potential tortfeasors whose negligence

primarily caused the injured party's harm." Rodriguez v. Primadonna Co., LLC, 216 P.3d 793, 801 (Nev. 2009). "At the heart of the doctrine is the premise that the person seeking to assert implied indemnity - the indemnitee - has been required to pay damages caused by a third party - the indemnitor." Id. (quoting Harvest Capital v. W.Va. Dept. of Energy, 560 S.E.2d 509, 513 (2002)). "Implied indemnity has been developed by the courts to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party." Id.

Generally, in Nevada, the remedy of equitable indemnity is available after the defendant has extinguished its own liability through settlement or by paying a judgment. Id. The Nevada Supreme Court holds that "a cause of action for indemnity . . . accrues when payment has been made." Id. (quoting Aetna Cas. & Sur. v. Aztec Plumbing, 106 Nev. 474, 476, 796 P.2d 227, 229 (1990)). A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter. Id.

In this matter, the Maryland Square Defendants' cause of action for equitable indemnity, although sparse, appears to state a claim for relief against Sears. In their complaint, the Maryland Square Defendants have made general allegations against the "Boulevard Mall Operators," alleging that those entities are responsible for "the PCE or other chemical contamination that may form the plume" under Plaintiffs' residences. Although Sears is identified with several other entities as the "Boulevard Mall Operators," the factual assertions against those entities are sufficient to state a claim that is plausible on its face as to Sears.

However, in addition to the foregoing, Sears also argues that the Maryland Square Defendants' claim for equitable indemnity must be dismissed because the Maryland Square Defendants have not asserted any pre-existing relationship between them and Sears, which Sears states is required to assert a claim for equitable indemnity under Nevada law. (Motion

11

to Dismiss (#310) at 24). In response, the Maryland Square Defendants state that they are not required to plead a nexus or special relationship between them and Sears to be entitled to equitable indemnity. (Opposition to Motion to Dismiss (#318) at 8). Rather, the Maryland Square Defendants state that this requirement is only necessary when seeking a recovery of attorney's fees.

In Reid v. Royal Ins. Co., the Nevada Supreme Court discussed a cause of action for equitable indemnity. 80 Nev. 137, 141, 390 P.2d 45 (Nev. 1964). In that case, the court noted that: "A defendant is permitted to defend the case and at the same time assert his right of indemnity against the party ultimately responsible for the damage." Id. "The application of indemnity (when proper) shifts the burden of the entire loss from the defendant tort-feasor to another who should bear it instead." Id. (citing Prosser, Torts §46 (2nd Ed.)). As a general proposition, the court held that "the third-party practice device is *not* available in a case involving joint or concurrent tort-feasors having no legal relation to one another, and each owing a duty of care to the injured party." Id. (quoting State ex re. Siegel v. McLaughlin, 315 S.W.2d 499, 507 (Mo. Ct. App. 1958). In such a case, "the plaintiff has the right to decide for himself whom he shall sue." Id. The court stated that third-party indemnity practice "shall not be used by a defendant for the purposes of offering another defendant to the plaintiff." Id.

In Scaffidi v. United Nissan, the court dismissed an equitable indemnity claim because there was not a preexisting relationship between the party seeking indemnity and the alleged secondary tortfeasor. 425 F.Supp. 2d 1159, 1171 (D.Nev. 2005). In Scaffidi, the court cited the rule established in Reid and held that Nevada law requires "a preexisting legal relation . . . or some duty on the party of the primary tortfeasor to protect the secondary tortfeasor" in order for equitable indemnity to apply. Id.; see also The Doctors Co. v. Vincent, 120 Nev. 644, 688, 98 P.3d 681 (Nev. 2004)(stating that "in order for one tortfeasor to be in a position of secondary responsibility vis-a-vis another tortfeasor, and thus be entitled to indemnification, there must be a preexisting legal relation between them, or some duty on the party of the primary tortfeasor to protect the secondary tortfeasor").

///

In light of the foregoing case law, the Court finds that the Maryland Square Defendants have failed to state a claim for equitable indemnity against Sears because the Maryland Square Defendants have not asserted the existence of any preexisting relationship or duty between the parties as required by Nevada law. Nevada law provides that a special relationship must exist between an indemnitor and indemnitee in order for that cause of action to apply. By failing to allege the existence of such a relationship, the Maryland Square Defendants have failed to state a claim for relief for equitable indemnity.

## IV. Motion to Consolidate

Also before the Court is the Shapiro Defendants' Motion to Consolidate Case No. 3:09-cv-231 with Case No. 2:08-cv-1618. (3:09-cv-231 Def.'s Mot. to Consolidate (#46); 2:08-cv-1618 Def.'s Mot. to Consolidate (#335)). On June 24, 2010, the Maryland Square Defendants joined the motion to consolidate. (2:08-cv-1618 Def.'s Joinder (#357)). The State of Nevada has also indicated that it does not object to consolidation. (Oberman Decl. ¶ 6, attached to 3:09-cv-231 Def.'s Mot. to Consolidate (#46)). The Individual Plaintiffs, however, oppose the motion to consolidate. (2:08-cv-1618 Pl.'s Opp'n (#346)).

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a). The purpose of consolidation is to avoid unnecessary cost and delay. See id.; E.E.O.C. v. HBE Corp., 135 F.3d 543, 550 (8th Cir. 1998) (discussing prior, but substantially identical version of Rule 42). It is appropriate to consolidate cases to "avoid the inefficiency of separate trials involving related parties, witnesses, and evidence." HBE Corp., 135 F.3d at 551. "The district court may order consolidation despite the opposition of the parties." St. Bernard Gen. Hosp. v. Hosp. Serv. Ass'n of New Orleans, 712 F.2d 978, 989 (5th Cir. 1983). "The fact that a defendant may be involved in one case and not the other is not sufficient to avoid consolidation." Id. "Consolidation is inappropriate, however, if it leads to inefficiency, inconvenience, or unfair prejudice to a party." Id. A court abuses its discretion if it consolidates two claims against the same defendant that involve unrelated legal and factual issues. Enter. Bank v. Seattele, 21 F.3d 233, 236 (8th Cir. 1994). "Consolidation of issues and claims is committed to the

discretion of the trial court." HBE Corp., 135 F.3d at 551. "The burden is on the movant to convince the court that there should be consolidation." Transeastern Shipping Corp. v. India Supply Mission, 53 F.R.D. 204, 206 (S.D.N.Y. 1971).

"Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial." Mills v. Beech Aircraft Corp., Inc., 886 F.2d 758, 762 (5th Cir. 1989); St. Bernard, 712 F.2d at 990 (holding that district court may deny consolidation when one case is ready for trial and the others are still in discovery); Transeastern Shipping, 53 F.R.D. at 205–06 (denying motion to consolidate because, though the cases presented common questions, some were ready for trial, some were in pretrial, and some had not yet entered pretrial). In Mills, the plaintiffs moved to consolidate with a case arising from the same airplane crash. Id. at 761. The other case was filed more than two years after the plaintiffs' case. Id. at 762. The plaintiffs had already entered a final pretrial order. Id. The district court denied the plaintiffs' motion to consolidate, noting that the litigant in the other case did not wish to be limited to plaintiffs' discovery and bound by plaintiffs' pretrial order. Id. The appellate court affirmed. Id.

In this matter, the parties do not contend that these two cases lack common questions of law and fact. Instead, they dispute whether or not the advantages to judicial economy and convenience of a single trial outweigh the potential prejudice due to delay to the Individual Plaintiffs. The Individual Plaintiffs essentially argue that consolidation will result in prejudicial delay because the two cases are at different stages in preparedness for trial and because they may soon succeed on their motion for summary judgment. (2:08-cv-1618 Pl.'s Opp'n (#346) 2:18–25). They argue that their case is ready for summary judgment and trial while the State of Nevada's case is still in the process of finalizing the pleadings and serving summons. (Id. at 7:4–13). The Individual Plaintiffs also argue that the State of Nevada's case is more complex than their case because the State's case involves issues determining causation, proper remediation, and appropriate costs. (Id. at 7:14–19). The Individual Plaintiffs finally argue that they will be burdened if they have to wait through a six to eight-week trial to determine which of the defendants should pay for the clean up while their case is summary

in nature. (Id. at 7:19–25). The Shapiro Defendants argue that the convenience of resolving all issues with one trial outweighs the Individual Plaintiffs' concerns. (3:09-cv-231 Def.'s Reply (#64) 6:15–28).

Given that the Individual Plaintiffs were not able to bifurcate their case from the third-party claims, these two cases are in very similar stages of trial preparedness. Furthermore, both are still in discovery and neither has filed a pretrial order. In fact, both may still amend pleadings. If the cases are consolidated, the Individual Plaintiffs' may still succeed on their motion for summary judgment and suffer no delay in receiving injunctive relief. Therefore, the Court grants the motions to consolidate.

## CONCLUSION

For the foregoing reasons, it is ORDERED that the Motion of Defendant Melvin Shapiro for Leave to File a Third Party Complaint (#249) is GRANTED.

IT IS FURTHER ORDERED that General Growth Management, Inc. and Boulevard Mall, LLC's Motion for More Definite Statement (#292) is GRANTED.

IT IS FURTHER ORDERED that Sears Roebuck & Company's Motion to Dismiss (#310) is GRANTED IN PART and DENIED IN PART. The claim for equitable indemnity against Sears is dismissed. The remaining claims for relief are not dismissed, but the Maryland Square Defendants are to amend those claims consistent with this Order.

IT IS FURTHER ORDERED that the Motion to Consolidate (#335) in Case No. 2:08-cv-1618 and Motion to Consolidate (#6) in Case No. 3:09-cv-231 are GRANTED.

DATED: This 22nd day of July, 2010.

_____
United States District Judge